IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Shirley G. Lawrence, o/b/o<br>L. L., a minor child,<br><br>      Plaintiff,<br><br>  vs.<br><br>Michael J. Astrue,<br>Commissioner of Social Security,<br><br>      Defendant. | Civil Action No. 8:07-3732-MBS-BHH<br><br><br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Shirley G. Lawrence, on behalf of her minor child, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her minor child's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

L.L. was 10 years old when the plaintiff filed the application on his behalf, and 15 years old as of the Administrative Law Judge's (ALJ) August 2007 decision. (R. at 140.) The plaintiff alleged that L.L. was disabled due to attention deficit hyperactivity disorder (ADHD), learning problems, depression, cyclothymia (a mood disorder), oppositional defiant disorder (persistent disobedience toward authority figures), and asthma. (R. at 140-46.)

The plaintiff protectively filed an application for supplemental security income (SSI) and children's disability benefits on March 1, 2008. (R. at 117, 140-46.) The applications

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

were denied initially and upon reconsideration. (R. at 75-77, 84-88.) The ALJ found on August 4, 2007, following a *de novo* hearing, that L.L. was not disabled because his impairments did not cause limitations of the degree required to meet, medically equal, or functionally equal one of the listings for childhood disability as required under the regulations. (R. at 11-22.) As the Appeals Council denied the plaintiff's request for review (R. at 3-6), the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1) The claimant was born on August 22, 1991. Therefore, he was an adolescent on March 9, 2005, the date the application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2)).
>
> (2) The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.924(b) and 416.972).
>
> (3) The claimant has the following severe impairments: attention deficit hyperactivity disorder and borderline intellectual functioning (20 CFR 416.924).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924), 416.925 and 416.926).
>
> (5) The claimant does not have an impairment or combination of impairments that functionally equals the listing (20 CFR 416.924(d) and 416.926a).
>
> (6) The claimant has not been disabled, as defined in the Social Security Act, since March 9, 2005, the date this application was filed (20 CFR 416.924(a)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform

alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her son disabled. The plaintiff's principal contention is that the ALJ failed to find that the plaintiff's mental

impairment's met the Listing criteria of Section 112.05, 20 C.F.R. pt. 404, Subpart P, App. 1. Section 112.05 states in relevant part:

> 112.05 Mental Retardation: Characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, D, E *or* F are satisfied.
>
> . . .
>
> D.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function . . . .

20 C.F.R. pt. 404, Subpart P, App. 1, § 112.05. The plaintiff contends that the ALJ failed to find that her son's Intelligent Quotient ("IQ") met the scaled score requirement of subsection D of that Listing and, further, failed to consider whether he met the functional limitation criteria as well.

The plaintiff's son obtained two sets of IQ scores. In 2002, the plaintiff attained a full scale IQ score of 74, verbal IQ score of 89, and a performance IQ score of 63. (R. at 316-23.) In 2005, the plaintiff attained a full scale IQ score of 40, verbal IQ score of 46, a and performance IQ score of 46. While at least portions of the plaintiff's IQ scores, on both occasions, fell within the requisite numerical range, the ALJ cited specific reasons for concluding that those scores were not valid.

First, the ALJ rejected the 2005 scores on the grounds that they were "considered [by the examiner, Dr. Ritz, to be] invalid due to lack of effort and poor focus by the claimant" and were inconsistent with the earlier IQ scores from 2002. (R. at 15, 284.) Second, the ALJ rejected the 2002 scores based on the examining psychologist's express conclusion that "the claimant's true and best measure of his ability level would be the higher of the two scores [verbal IQ score of 89] which fell within the higher limits of the low average range of intellectual ability." (R. at 318; see also 15.)

5

In order to meet a listing, a claimant must show that all criteria contained in the listing are met. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir.1992). Meeting only some criteria for a listing "no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530.

As a threshold matter, Listing 112.05(D) requires a valid verbal, performance, or full scale I.Q. score of 60 through 70. 20 C.F.R. pt. 404, Subpart P, App. 1, § 12.05(D). While it is clear that the plaintiff received a score in the range contemplated, the issue remains as to whether such score is "valid" as required by the regulation. *See id*. The requirements of the relevant listing are only satisfied when the relevant IQ scores are "valid." *See, e.g., Williamson v. Secretary of Health & Human Servs.*, 796 F.2d 146, 147-50 (6th Cir.1986) (upholding Secretary's finding of no severe impairment as supported by substantial evidence where IQ examiner found that claimant's score did not reflect his real status); *see also Espinoza* ex rel. *Hannah v. Astrue*, 2008 WL 5087671, at *10 (E.D.N.C. November 25, 2008). An "ALJ is allowed some leeway to evaluate other evidence when determining the validity of an I.Q. score . . . [t]he word 'valid' would be superfluous otherwise. Where an I.Q. score is inconsistent with the remainder of evidence in the record on the claimant's daily activities and behavior, it need not be conclusive proof of mental retardation." *Powell v. Barnhart*, 2005 WL 1926613, at * 4 (W.D. Va. August 9, 2005)(citing *Popp v. Heckler*, 779 F.2d 14978, 1499 (11th Cir.1986)). Likewise, an ALJ "may decline to accept a claimant's performance [on an IQ test] . . . where the claimant's performance in IQ testing is depressed . . . ." *Robertson v. Barnhart*, 2006 WL 3526901, at * 2 (W.D.Va. December 1, 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

In this case, the ALJ relied on the express conclusions of the ***examining*** physicians that the scores were not "valid," in the sense that they were not fully reflective of the plaintiff's true ability level. (R. at 15, 284, 318.) Such opinions constitute substantial evidence for the ALJ to reject the plaintiff's claim that he meets the numerical score requirement of Section 112.05(D). *See Williamson*, 796 F.2d at 147-50; *Espinoza* ex rel.

6

*Hannah v. Astrue*, 2008 WL 5087671, at *10. The fact that the plaintiff has cited to other evidence potentially supportive of a conclusion that the scores were, in fact, consistent with his actual functional ability (see R. at 267-69, 300, 317, 318-20, 322, 403, 432) is of no moment. *See Blalock*, 483 F.2d at 775. As recited, the ALJ had substantial evidence to conclude as he did and the Court will not disturb his decision. The interpretation of the examiners is powerful evidence upon which the ALJ was entitled to rely in disregarding the scores.

The plaintiff appears to argue that the defendant has misrepresented the examiner's conclusion in regards to the 2002 test. He seems to contend that the examiner did not, in fact, reinterpret the performance IQ score of 63 to be more consistent with the verbal IQ score of 89. (R. at 318.) But, to the Court, the evidence can hardly be read of any other conclusion. The examiner cites to both scores and states that the better measure of his ability is the higher, 89 score. *Id*. In the undersigned's estimation, the evidence speaks of an express repudiation of the 63, performance IQ score. Moreover, this argument is not a post-hoc rationalization of the defendant, as the plaintiff would contend. The ALJ's determination in regards to Listing 112.05 was premised squarely on what he interpreted to be the examiners' rejection of the relevant IQ scores. The mere absence of the phrase "not valid" does not change what is the reasonable and clear implication of that opinion evidence.

Because the ALJ was justified in concluding that the plaintiff did not satisfy the numerical score requirement of Listing 112.05(D), he was under no obligation to consider the other criteria regarding the plaintiff's functional ability. As stated, the plaintiff was required to establish that he satisfied *every* element of the Listing. His failure to do so, in regards to his IQ score, relieved the ALJ of the need to analyze the Listing any further. If the district court were to conclude, however, that the ALJ's determination that the plaintiff had failed to establish an IQ score between 60 and 70 was not supported by substantial

7

evidence, then a remand likely would be necessary for the ALJ to properly consider the remaining functional criteria of 12.05(D).

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

s/BRUCE H. HENDRICKS
UNITED STATES MAGISTRATE JUDGE

December 11, 2008
Greenville, South Carolina