IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Shirley G. Lawrence, o/b/o ) | |
| L.L., a minor child, ) | |
| ) | C/A No. 8:07-3732-MBS |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Michael J. Astrue, Commissioner of ) | **O R D E R** |
| Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act (the "Act"), codified as amended at 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner").

## I. RELEVANT FACTS & PROCEDURAL HISTORY

Shirley Lawrence ("Plaintiff") filed this action on behalf of her minor child (L.L.). Plaintiff alleges that L.L. is disabled due to attention deficit hyperactivity disorder (ADHD), learning problems, depression, cyclothymia (a mood disorder), oppositional defiant disorder (persistent disobedience toward authority figures), and asthma. (Tr. 140-46, 316). Plaintiff filed applications for both Supplemental Security Income ("SSI") and children's disability benefits on March 1, 2008. (Tr. 117, 140-46). Plaintiff's applications were denied at the initial and reconsideration levels of administrative review. Plaintiff requested a hearing before an ALJ. The hearing was held on December 20, 2006. (Tr. 11). The ALJ found that L.L. was not disabled within the meaning of the Social Security Act. (Tr. 12). The Appeals Council denied Plaintiff's request for review on October 26, 2007, thereby making the ALJ's decision the "final decision" of the Commissioner. (Tr. 3-5).

In reaching the conclusion that L.L. was not entitled to benefits, the Commissioner adopted the ALJ's findings. Only the first five of these findings, which correspond to the five-step sequential evaluation of disability laid out in 20 C.F.R. § 416.924(a) are currently relevant in this case. With respect to those five findings, the Commissioner adopted the ALJ's findings that:

(1) The claimant was born on August 22, 1991. Therefore, he was an adolescent on March 9, 2005, the date the application was filed, and is currently an adolescent (20 CFR 416.926a(g)(2));

(2) The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.924(b) and 416.972);

(3) The claimant has the following severe impairments: attention deficit hyperactivity disorder and borderline intellectual functioning (20 CFR 416.924);

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926);

(5) The claimant does not have an impairment or combination of impairments that functionally equals the listing (20 CFR 416.924(d) and 416.926a); and

(6) The claimant has not been disabled, as defined in the Social Security Act, since March 9, 2005, the date this application was filed (20 CFR 416.924(a)).

(Tr. 14-15, 22).

Of these five steps, step four is the most relevant for purposes of the court's present review. At step four, the ALJ explained that L.L. has a set of IQ scores from 2002 and 2005. (Tr. 15). The record reflects that the 2005 IQ scores fall within the limits for mental deficiency, but the scores were invalid due to lack of effort and poor focus by L.L.[1] (Tr. 15). The record further reflects that L.L.'s 2002 performance IQ score was within the range for mental deficiency.[2] (Tr. 15). The ALJ,

---

[1] Full scale IQ score of 40, verbal IQ score 46, and performance IQ of 46.

[2] Full scale IQ score of 74, verbal IQ score 89, and performance IQ of 63.

2

however, states that the true and best measure of L.L.'s ability falls within the higher limits of the low average range of ability. (Tr. 15). The support for this statement is the report of the examining psychologist. (Tr. 15).

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Bruce H. Hendricks for a Report and Recommendation. On December 11, 2008, the Magistrate Judge filed a Report and Recommendation in which she recommended that the Commissioner's decision to deny benefits be affirmed. Plaintiff filed objections to the Report and Recommendation on December 19, 2008. The Commissioner filed a reply to Plaintiff's objections on January 7, 2009.

This matter now is before the court for review of the Magistrate Judge's Report and Recommendation. The court is charged with making a *de novo* determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b).

## II.  STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### III. THE APPLICABLE LAW AND REGULATIONS

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability." 42 U.S.C. § 423(a). Disability is defined in 42 U.S.C. § 423(d)(1)(A) as: "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

The Listings provide that mental retardation in individuals under eighteen is "characterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning," as evidenced by the fulfillment of one of six additional criteria, labeled A through F, and set out at

Listing 112.05. 20 C.F.R. pt. 404, Subpart P, App. 1, § 112.05. To qualify as mentally disabled, Listings 112.05D requires that a child between three and eighteen years of age have "a valid verbal, performance, or full scale IQ of 60 through 70." *Id.* at § 112.05D. Listing 112.05D also requires a showing of "a physical or other mental impairment imposing an additional and significant limitation of function." *Id.* The Listings also require that IQ test results must be sufficiently current for accurate assessment under 112.05. *Id.* at 112.00D (10). IQ test results are sufficiently current for four years when obtained between ages seven and sixteen when the tested IQ is less than 40, and for two years when the tested IQ is 40 or above. *Id.*

## V. DISCUSSION

A.  2002 Performance IQ Score

Plaintiff first contends that the Magistrate Judge erred in concluding that the ALJ was justified in rejecting L.L.'s 2002 performance IQ score of 63. Plaintiff contends the Magistrate Judge's statement that the ALJ rejected the 2002 scores based on the examining psychologist's express conclusion that "the claimant's true and best measure of his ability level would be the higher of the two scores [verbal score of 89] which fell within the higher limits of the low average range of intellectual ability" is not a reflection of the examining psychologist's opinion that the score was invalid. Rather, Plaintiff contends the remaining information on the test, other than the scores, supports the fact that L.L. had serious problems functioning. The court agrees.

The phrase "supported by substantial evidence" has been defined by the courts as evidence that a reasoning mind would accept as sufficient to support a particular conclusion and evidence that is more than a scintilla but somewhat less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). As an initial matter, the record reflects that L.L. was ten years old when the

5

2002 IQ test was administered. Thus, the 2002 performance score was not current enough to be considered sufficiently accurate. This weighs against finding the ALJ's report is supported by substantial evidence.

The record reflects that in the IQ test in question, there was a twenty-six point difference between L.L.'s verbal and performance scores. (Tr. 318). The examining psychologist opined that the true and best measure of L.L.'s ability was the higher of the two scores, which was the verbal score of 89. (Tr. 318). A verbal score of 89 places L.L.'s ability level within the higher limits of the Low Average Range of ability, whereas L.L.'s performance score of 63 placed L.L. within the requirements of Listing 112.05D. (Tr. 318). With respect to the administration of the IQ test, the examining psychologist stated that L.L. did not have difficulty with the visual portion of the test. However, the examining psychologist noted that L.L. had difficulty processing the directions that had been given to him with a motor response, which is part of the performance portion of the IQ test. (Tr. 318). The record also reflects that L.L was listening but he experienced difficulty processing the information. (Tr. 318). The examiner explained the Coding subtest to L.L with several concrete examples, but L.L. either did not understand or had forgotten what he was told and shown by the time the subtest started. The examiner went on to express her opinion that L.L. will need very concrete explanations with many examples in order to succeed with a visual motor task. Moreover, the record reflects that L.L. experienced this level of difficulty in this area after he practiced the test with a sample of the procedure. Given these facts, the court finds the statement cited by the ALJ as support for finding L.L.'s 2002 Performance IQ Score invalid is inconsistent with the totality of the report. Therefore, the court finds that the Commissioner's decision was not supported by substantial evidence.

VI. CONCLUSION

After reviewing the entire record, the applicable law, the briefs of counsel, the findings and recommendations of the Magistrate Judge, the Plaintiff's objections, and the Commissioner's reply, this court declines to adopt the recommendation of the Magistrate Judge. For the reasons set out hereinabove, the Commissioner's final decision to deny benefits is **reversed** pursuant to sentence four of § 405(g) and the case is **remanded** for further administrative proceedings as set fourth herein.

**IT IS SO ORDERED**.

s/Margaret B. Seymour
Margaret B. Seymour
United States District Judge

Columbia, South Carolina

March 27, 2009